**Simona PENA on Behalf of Gloria ZAMORA, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. SA–81–CA–187.**

United States District Court,
W.D. Texas,
San Antonio Division.

March 18, 1985.

Bill McKee, Legal Aid Ass'n, San Antonio, Tex., for plaintiff.

Harold O. Atkinson, Asst. U.S. Atty., San Antonio, Tex., for defendant.

## ORDER

PRADO, District Judge.

The matter before the Court is the Defendant's motion for summary judgment filed February 8, 1982 and plaintiff's motion for summary judgment filed March 3, 1982. Both motions were supplemented after the district court ordered the case remanded "for development of substantial evidence to determine the biological paternity issue" on September 22, 1982, and another administrative hearing held March 3, 1983. Also before the Court are the Findings and Recommendation of Magistrate Robert B. O'Connor, filed January 18, 1985, and objections filed thereto.

This case has had an unusually lengthy procedural history. Application for survivor's insurance benefits, 42 U.S.C. § 402(d), was originally made in September 1972 for Gloria Zamora. She claims entitlement to children's benefits through Richard Zamora, who died July 17, 1968. Her application was denied and she did not appeal.

In July of 1979, she applied once again for benefits. The Secretary of Health and Human Services considered the application a reurging of the 1972 request and denied same. (Tr. I 81). Claimant then appealed the denial. After a hearing was held on April 24, 1980, the Administrative Law Judge (ALJ) ruled that because claimant's mother was legally married to one other than Zamora at the time claimant was conceived, she was presumed to be a child of the parties to the marriage. *See* Tex.Fam. Code Ann. § 12.02 (Vernon 1975). Upon review, the Appeals Council adopted the ALJ's decision and supplemented it with its own finding that claimant had not established status as Zamora's child under the

Social Security Act, 42 U.S.C. § 416(h)(2)(A) or § 416(h)(3)(C), or Texas law. *See* Tex. Prob.Code Ann. § 42 (Vernon 1980).

Claimant then appealed to this Court on April 3, 1981. Magistrate O'Connor recommended that defendant's motion for summary judgment be granted finding substantial evidence in the record to support the administrative decision. Former Judge Fred Shannon rejected this recommendation and on September 22, 1982, remanded the matter to the Secretary "for the development of substantial evidence to determine the biological paternity issue."

After another administrative hearing was held March 3, 1983, the ALJ ruled that the 1973 denial of claimant's September 1972 application could not be reopened and that the principle of res judicata controlled determination of the 1979 application, requiring denial of benefits. The Appeals Council rejected the ALJ's decision and in a ten-page opinion reached the same findings and conclusions as it did three years earlier. The federal action was then reinstated, and supplemental briefs filed. Magistrate O'Connor has once again recommended denial of the application based on the finding of substantial evidence in the record.

The issue in this case is whether Gloria Zamora may be considered a child of Richard Zamora for purposes of entitlement to survivor's benefits. The Social Security Act is very specific in its provisions concerning who may qualify as a child and thereby be entitled to benefits. Section 416(h)(3)(C), 42 United States Code, provides that claimant shall be deemed to be a child of the insured if the insured acknowledged the relationship in writing, or if the insured had been decreed to be the parent of the claimant by a Court or ordered to contribute to the claimant's support. Entitlement may also be recognized if the insured "is shown by evidence satisfactory to the Secretary" to have been the parent of the claimant and if the insured was living with or contributing to the support of the claimant when the insured died. *See* 42 U.S.C. § 416(h)(3)(C)(ii).

In addition to the provisions of the federal statute, the Act awards benefits to persons who would be considered a child under the intestacy laws of the state in which the insured was domiciled at death. 42 U.S.C. § 416(h)(2)(A). If a person is considered a child under state law, he is deemed dependent for purposes of the Act. *See* 42 U.S.C. § 402(d)(3); *see also Mathews v. Lucas*, 427 U.S. 495, 499, 96 S.Ct. 2755, 2759, 49 L.Ed.2d 651 (1976). Texas law in effect at the time of claimant's original application for benefits (1972) provided that illegitimates could only inherit through their fathers if their parents subsequently married. See Tex.Prob.Code Ann. § 42 (Vernon 1956). This law has since been declared unconstitutional as applied to illegitimates and has been amended. *See, e.g., Mendez v. Heckler*, No. SA-80-CA-283 (W.D.Tex. Sept. 9, 1982); *Ramon v. Califano*, 493 F.Supp. 158 (W.D.Tex.1980); *Sullivan v. Harris*, No. SA-78-CA-396 (W.D. Tex. Mar. 13, 1980); *Lovejoy v. Tillie*, 569 S.W.2d 501 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). However, the law applicable to this case is the law in force at the time of application for benefits. *See Cox v. Schweiker*, 684 F.2d 310, 318 (5th Cir.1982). Where the applicable state law is found to unconstitutionally deprive a group of benefits, the Fifth Circuit has observed that the "normal judicial remedy is to extend the benefits to the deprived group." *Id.* at 317; *accord Handley v. Schweiker*, 697 F.2d 999, 1001 (11th Cir.1983), *cited with approval in Mendez v. Harris*, No. SA-80-CA-283 (W.D.Tex. Sept. 9, 1982).[1] Here the deprived group consists of those persons who, regardless of their status as

---

1. In *Mendez* Judge Shannon certified a class consisting of "all illegitimate children of wage earners who died prior to August 27, 1979 . . . and while domiciled in Texas, which children's claims for surviving child's benefits on the Social Security accounts of their deceased wage earners/fathers were denied at the initial, reconsideration, hearing or Appeals Council level on or after April 14, 1980, that is, 60 days prior to the filing of this action." *Order*, December 4, 1981. Gloria Zamora is a member of this class.

illegitimate children, can nevertheless prove biological paternity.

In *Cox*, the ALJ found that the record satisfactorily established proof of paternity. The court, therefore, ruled that the claimant was entitled to benefits. *See* 684 F.2d at 324. The Appeals Council in this case refused to make this finding. Rather, it found that claimant had not submitted sufficient probative evidence to rebut the presumption that she is the legitimate child of her mother's marriage, dissolved four months prior to her birth. In the alternative, the Appeals Council found that claimant had not proven that the wage earner acknowledged paternity, nor established paternity by "clear and convincing evidence." (Tr. II 11)

Magistrate O'Connor recommended that these findings were supported by substantial evidence and must be affirmed. Plaintiff vehemently objected to the recommendation. This Court has carefully reviewed the recommendation, objections, and the defendant's response thereto, and thoroughly studied the administrative record, prior pleadings and orders, and relevant case authorities. Based upon this review, the Court finds that there is not substantial evidence in the record to support the Secretary's decision and, in addition, the Secretary applied an incorrect burden of proof of paternity.

█ In reaching this decision this Court is mindful of its limited role in Social Security cases. The decision of the Secretary must stand if the evidence is such that a reasonable mind might accept as adequate to support the conclusion. *See Martin v. Heckler*, 748 F.2d 1027 (5th Cir.1984). However, this standard of review is not a "rubber stamp". The Court must scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the Secretary's findings. *See Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir.1985); *accord Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir.1984). Further, the Court must ensure that the Secretary applied the proper legal standards in reaching her conclusion. *See*

*Cook v. Heckler*, 750 F.2d at 393. Finally, the Court must analyze the Secretary's theory of credibility by which evidence was weighed or discounted. *See Gay ex rel. McBride v. Heckler*, 583 F.Supp. 499, 503 (N.D.Ga.1984).

█ Turning to the Secretary's finding that claimant has not rebutted the presumption that she is the legitimate child of her mother's first husband, the Court finds that there is not substantial evidentiary support. Simona Pena, claimant's mother, testified that she lived with her husband, Willie Soto, only a short time after their marriage in March of 1961. There is no evidence contradicting this testimony. She further testified that she was involved with Richard Zamora, and only Zamora, at the time of claimant's conception. Again, there is no contrary evidence in the record. Furthermore, birth and baptismal certificates identify Zamora as claimant's father. Although the wage earner was not the informant, this alone does not diminish the reliability of these documents. The statements made therein were made while Zamora was alive, and no motive to falsify parentage has been shown. There certainly is no proof of falsification to establish inheritance rights. The Court believes these documents are inherently trustworthy.

The Secretary places great weight on Zamora's prison record and statement included therein that Zamora had no marriages and no children. (Tr. I 124). The Court is much more skeptical. The Court is unsure of the date of preparation of the record or whether it was prepared over a period of time. Page 2 of the document dated May 31, 1967, is an independently prepared FBI record. (Tr. I 122). It does not suggest that the remainder of the TDC record was prepared in 1967. Neither do the 1967 dates on page 1 conclusively prove that any and all information in the document was recorded in 1967. (Tr. I 120) It is much more logical to assume that a prison record was first created and typed when Zamora entered prison in 1965 and that a page containing family information

would have been prepared at that time. If prepared at the time of Zamora's incarceration in mid-1965, it predates claimant's birth in December, 1965. There is no evidence in the record suggesting when Zamora knew about his daughter's birth, or if he knew of her existence before his release from TDC in 1968. Because Zamora was illiterate (Tr. I 120), it is improper to assume that he was or should have been aware of claimant's birth through correspondence with Pena or his family in Poteet. Because of his illiteracy, it is also improper to assume that he read the prison record before signing it. Because of the uncertainties surrounding the preparation of the TDC record, the denial of marriages and children contained therein should be given little, if any, weight.

The Secretary also made much of inconsistencies in the record and chose to credit the earlier statements as the most reliable. Particularly probative to her are reports of interviews by Social Security Claims Representatives with Zamora's parents in 1973. It is unclear in what language the 1973 interviews were conducted and whether the Zamoras understood the inquiry or purpose of the contact. Josie Zamora reportedly told the claims representative that her son never told her that he was claimant's father, that he never acknowledged paternity in writing and that she doubted Pena's claims of paternity because Pena had had several illegitimate children by various men. Jose Zamora also told the representative that his son never told him that claimant was his child. The interviewer's notes of his conversation with Jose Zamora read:

> He never mentioned to us that he had or was going to have a child by Simona. We never received any letters from Richard while he was in the penitentiary or while he was working out of state. I don't know why Simona said that Gloria was Richard's daughter. She has had three other illegitimate children and is presently pregnant. (Tr. I–89)

Both parents refused to sign any statements for fear of getting someone into trouble. (Tr. I–118) The Court is doubtful of whether either parent could read or write in English or Spanish.

The Zamora's later testimony clarifies that their 1972 statements were responsive to the specific question of whether they had any written proof that their son was claimant's father. It is not unreasonable to believe that that was the narrow question asked given the state of the law in Texas in 1973. Further, Zamora's failure to openly acknowledge parentage to them at some time during the brief three-month period between his release from TDC and his death is not surprising and does not detract from the other evidence in the record. It also appears from their gratuitous comments concerning Pena's other relationships that in 1973 Zamora's parents were leary of admitting to an outsider, if even to themselves, that their son would have fathered a child with a woman with several children by other men. In short, the Court does not find that these statements contain significant inconsistencies nor that any inconsistency detracts from claimant's proof.

In relying on these earlier statements and the prison record, the Secretary refused to accord the other evidence in the record the weight it deserves without justification. The Court finds the baptismal and birth certificates objective and reliable documents, and the statement of paternity contained therein entitled to great weight. The Secretary held that because Zamora was not an informant the documents should be discounted. However, she failed to note that Zamora was imprisoned at the time they were prepared and unavailable. The record is void of any evidence which suggests that Pena had any reason to falsely identify Zamora as claimant's father in these documents, particularly when she could have listed Soto, with whom she was married at the time of claimant's conception, and thereby legitimated her daughter.

The Secretary totally ignored other evidence without reason. It is uncontroverted that Pena and Zamora lived together during 1968 after Zamora was released from prison and before his death, and that

they may have established a common law marriage. The fact that Pena was unable to leave Indiana to go to Poteet for Zamora's funeral is irrelevant to the issue of their relationship given her economic situation and employment. It is undisputed that claimant, who lived with her maternal grandmother, would occasionally spend the night with Pena and Zamora. Finally, the evidence reflects that claimant is similar in appearance and character to Zamora. Although this testimony is inherently subjective, it is nevertheless uncontroverted and is entitled to some weight.

Considering the record in its totality, minor inconsistencies of testimony do not detract from evidence of paternity. It is totally understandable that the record contains some inconsistencies. The conduct which this case has scrutinized for 13 years took place during a brief three month period, interrupted by Zamora's irregular employment out of town and Pena's travel to Indiana for seasonal farm work a week before Zamora's death. The relevant events took place at least four years prior to the original application for benefits. Finally, a great deal of the evidence consists of translations of testimony, by persons unaccustomed to speaking precisely, about events where much is communicated through innuendo.

■■■■ The evidence reviewed above in its totality more than sufficiently rebuts the presumption that claimant is Willie Soto's child. It also demonstrates by a preponderance of the evidence that Richard Zamora is the biological father of the claimant. Under authority of *Cox* and *Handley* claimant is therefore entitled to benefits. The Secretary required proof of paternity by "clear and convincing evidence." She failed to identify the authority for this enhanced burden of proof and the Court knows of none. Having applied the incorrect legal standard the Secretary's determination of no paternity cannot stand.

Having reviewed the record in this case and authorities under state and federal law bearing on the issue of proof of paternity,

the court refuses to require of the claimant an impossible burden. Although greater evidence in kind and quantity might have been expected in other cases, the proof presented here was sufficient. This Court joins others sensitive to the injustice worked by inflexible application of proof requirements when confronting claims by persons outside traditional family situations and middle income socio-economic groups. *See, e.g., Adams v. Weinburger*, 521 F.2d 656 (2nd Cir.1975); *Boyland v. Califano*, 633 F.2d 430 (6th Cir.1980); *Doran v. Schweiker*, 681 F.2d 605 (9th Cir. 1982); *Wagner v. Finch*, 413 F.2d 267 (5th Cir.1969); *Madison v. Richardson*, 354 F.Supp. 383 (M.D.La.1973). The claimant has more than satisfied her burden and established biological paternity by a preponderance of the evidence. The Secretary's decision is based on nothing more than a "mere scintilla" of evidence, and as such cannot be affirmed. Accordingly, it is ORDERED that the defendant's Motion for Summary Judgment be DENIED, claimant's motion be GRANTED and benefits be awarded claimant.

In order to avoid further delays in the resolution of this matter, the parties are ORDERED to advise the Court in writing and file same on or before March 28, 1985, (1) whether they can agree to the date from which the benefit award should run and (2) if agreement is not possible, file their briefs of argument and authorities setting forth their respective positions on this issue.