Mary E. MACON, on Behalf of Wanda
GRIFFIN and Raymond Macon,
Plaintiff–Appellant,

v.

Louis SULLIVAN, Secretary of Health
and Human Services,
Defendant–Appellee.

Nos. 90–3007, 90–3300.

United States Court of Appeals,
Eleventh Circuit.

April 11, 1991.

Lester C. Wisotsky, Greater Orlando Area Legal Services, Inc., Orlando, Fla., for plaintiff-appellant.

Kendell W. Wherry, Asst. U.S. Atty., Orlando, Fla., Stanley Ericsson, Dept. of Health and Human Services, Office of the Gen. Counsel, Social Sec. Div., Baltimore, Md., for defendant-appellee.

Before KRAVITCH and ANDERSON, Circuit Judges, and ATKINS *, Senior District Judge.

ANDERSON, Circuit Judge:

On behalf of her two illegitimate children, appellant Mary E. Macon appeals the denial of subject matter jurisdiction under

42 U.S.C. § 405(g) and 28 U.S.C. § 1361. Macon's complaint seeks review of the final decision of the Secretary of Health and Human Services denying surviving child's insurance benefits under the Social Security account of Billie L. Griffin, the deceased wage earner. The district court rejected jurisdiction under both § 405(g) and § 1361. We reverse the district court's denial of jurisdiction under 42 U.S.C. § 405(g), and therefore we decline to address the issue of mandamus jurisdiction under 28 U.S.C. § 1361.

## I. BACKGROUND

### A. *Statutory Background*

■ Title II of the Social Security Act requires that for an applicant to receive child's insurance benefits, he must be a "child" of the insured individual and must have been "dependent" on the insured at the time of the insured's death. *See* 42 U.S.C. § 402(d)(1)(C). A legitimate child, if unmarried and under a specified age, automatically qualifies as a "child" and as "dependent." *See* 42 U.S.C. §§ 402(d)(1) and 402(d)(3). In a related case, the District Court of the Northern District of Illinois aptly summarized the "child" and "dependency" requirements for illegitimate children as follows:

> Under the Act, an illegitimate child can prove his or her "child" status through one of three methods. The first method, set forth in 42 U.S.C. § 416(h)(2)(A), requires the applicant to prove that the applicant would have the same status as a child regarding the devolution of intestate personal property under the relevant state law. According to the second method, outlined in 42 U.S.C. § 416(h)(2)(B), a biological child of a technically invalid marriage can in certain circumstances be deemed a "child." Finally, an applicant can under 42 U.S.C. § 416(h)(3) meet the "child" requirement if certain documentation or evidence is proffered.

---

\* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

For those who establish their "child" status pursuant to either the second or third method, the Act deems them to be dependent. 42 U.S.C. § 402(d)(3). The Act is silent as to whether illegitimate children who acquire "child" status through the first method must submit actual proof of dependency.

*Brady v. Bowen,* No. 85–C–5544 at 3 (N.D. Ill. September 2, 1988).

In 1976, the Supreme Court decided that an applicant who acquires "child" status under the first method of qualification—i.e. by virtue of state intestacy laws pursuant to 42 U.S.C. § 416(h)(2)(A)[1] the "inheritance method"—is also to be considered legitimate, and thus dependent under 42 U.S.C. § 402(d)(3)(A). *See Mathews v. Lucas,* 427 U.S. 495, 499 n. 2 and 514 n. 17, 96 S.Ct. 2755, 2759 n. 2 and 2766–67 n. 17, 49 L.Ed.2d 651 (1976). In other words, an applicant with child status under 42 U.S.C. § 416(h)(2)(A) does not have to meet a separate requirement of dependency in order to be eligible for child's insurance benefits.

### B. *Boatman v. Schweiker*

The Secretary of the Department of Health and Human Services ("Secretary"), however, failed to implement the Supreme Court's holding in *Lucas.* In 1981, Ruth Boatman, on behalf of a class of plaintiffs, including Macon, sued the Secretary in the Northern District of Illinois, claiming that in light of the Supreme Court's holding, the Secretary was using improper guidelines in denying surviving child insurance benefits to illegitimate children under Title II of the Social Security Act.

On October 7, 1981, the parties entered into an Agreed Order ("*Boatman* Agreed Order"), effectively settling and dismissing the case. *Boatman v. Schweiker,* No. 78–C–299 (N.D.Ill. October 7, 1981). The Agreed Order implemented the Social Security Administration's new policy, "effective June 29, 1976, that a child claimant who can inherit intestate personal property under the law of the State of the wage earner's domicile is a deemed dependent upon the wage earner and is eligible for benefits." *Boatman* Agreed Order ¶ 1. The Secretary thereby agreed to amend its Claims Manual so that applicants who meet the definition of "child" under § 416(h)(2)(A) would also be deemed "dependent" and thus be eligible for benefits under the Social Security Act.[2] Furthermore, the Secretary agreed that "[a]dministrative *res judicata* will not be applied to bar any claim by an illegitimate child ever denied benefits pursuant to the dependency requirement of former Claims Manual § 2418." *Boatman* Agreed Order ¶ 7(c).[3]

## II. CURRENT PROCEEDINGS

### A. *Administrative Proceedings*

Appellant Mary E. Macon filed three applications, in 1977, 1980, and 1984, for sur-

---

**1.** 42 U.S.C. § 416(h)(2)(A) reads as follows:

In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.

**2.** Prior to the *Boatman* Agreed Order, § 2418 of the SSA's Claims Manual had stated as follows:

A [wage earner's] illegitimate child, even if not legitimate, may have the status of a "child" under the [Social Security] Act if he has been recognized or acknowledged under applicable State law for the purpose of inheriting intestate personal property....

If a child had been recognized so as to give him inheritance rights, but has not been legitimated, he cannot be deemed dependent upon his father but must establish living with or contributions toward his support from the acknowledging father.

**3.** The Illinois court certified a class of plaintiffs "on behalf of all illegitimate children who have applied for child's insurance benefits and have been denied on or after June 29, 1976, and before [October 7, 1981], at the initial, reconsideration, hearing or Appeals Council levels as a result of the application of the dependency requirement of former Claims Manual § 2418 or the application of a digest entry in Claims Manual § 2422 which has been changed as a result of this decree." *Boatman* Order ¶ 9.

viving child's insurance benefits under Title II of the Social Security Act on behalf of her illegitimate children, Wanda Griffin and Raymond Macon.[4] The Secretary denied the March 1, 1977 application because "a requirement of the social security law [was] not met,"—*i.e.*, "the father must have acknowledged the child in writing, or have been ordered by the court to contribute to the child's support or have been judicially decreed to be the child's father, or have been otherwise established as the child's father and was living with the child or contributing to this support." Social Security Notices of Disapproved Claims to Mary E. Macon for Wanda Griffin and Raymond Macon (May 31, 1977) [R1–27–Exhibits]. The parties agree that the Secretary's notice of rejection paraphrases a portion of 42 U.S.C. § 416(h)(3).[5] The language of the notice of rejection clearly indicates that the denial was based on the failure to demonstrate only one of the three methods by which an illegitimate child can prove his or her "child" status. Specifically, the notice of rejection based the denial on the failure to establish child status under 42 U.S.C. § 416(h)(3). The significant fact for this case is that the notice of rejection was not based on a failure to demonstrate qualification under the inheritance method (*i.e.*, 42 U.S.C. § 416(h)(2)(A)). The notice of rejection expressly states that benefits were denied because *a* requirement was not met, and that requirement was identified as the § 416(h)(3) method.[6]

Macon did not file for reconsideration of her first application, but she attempted to reopen the 1977 application on February 29, 1980.[7] After the Secretary denied this second application initially and upon reconsideration, the administrative law judge (ALJ) dismissed Macon's request for a hearing on the merits on the basis of administrative *res judicata*.[8] The Appeals

---

**4.** The 1984 application is not at issue in this appeal.

**5.** Section 416(h)(3) states, in relevant part:
An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if:
(C) in the case of a deceased individual—
(i) such insured individual—
(I) had acknowledged in writing that the applicant is his or her son or daughter,
(II) had been decreed by a court to be the mother or father of the applicant, or
(III) had been ordered by a court to contribute to the support of the applicant because the applicant was his or her son or daughter, and such acknowledgement, court decree, or court order was made before the death of such insured individual, or
(ii) such insured individual is shown by evidence satisfactory to the Secretary to have been the mother or father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died.

**6.** The Secretary argues that the denial of the 1977 application was also based on the failure of Macon to demonstrate "child" status, by which the Secretary apparently means the failure to demonstrate that Billie L. Griffin was the father of the children and that the children could inherit from him. We reject that argument because it is inconsistent with the express language of the 1977 notice of rejection. The

unsupported statement of counsel for the Secretary is not sufficient to refute the express language of the notice. We note also that the administrative law judge, in denying the 1980 application, assumed that the 1977 denial was based, not on a failure to demonstrate that Billie L. Griffin was the natural father, but rather on the failure to demonstrate the same § 416(h)(3) facts on which the 1977 notice of rejection also relied. *See infra* note 8.

**7.** According to §§ 404.987–.989 of Social Security Regulations 4, a determination by the SSA may be reopened within four years of the date of the Notice of Initial Determination if there is "good cause" to open the case. "Good cause is established if there is new and material evidence or a clerical or substantive error on the face of the evidence on which such earlier determination was based." Administrative Law Judge's Order of Dismissal in the case of Mary E. Macon at 1 (August 28, 1981) [R1–27–Exhibit].

**8.** The ALJ found no good cause to reopen this case because he found that the new evidence presented by Macon was not material. The ALJ stated: "Although the new evidence adds strength to the allegation that Billie L. Griffin was the natural father of the subject children, the evidence is not material in the sense that it does not show that the deceased wage earner either acknowledged in writing that he was the natural father of the children, or that he had been decreed by Court to be their father, or had been ordered by a Court to contribute to their support. Furthermore, the evidence does not show that the deceased wage earner was either

Council initially denied review of this dismissal on January 22, 1982.[9] Upon reexamination, the Appeals Council concluded that the applicants did not have inheritance rights under Florida law, *i.e.*, that the applicants failed to meet the definition of "child" under 42 U.S.C. § 416(h)(2)(A).[10]

### B. *Judicial Proceedings*

On March 22, 1982, Macon filed a complaint against the Secretary in the Middle District of Florida, seeking judicial review of the Appeals Council's denial of her second application for benefits pursuant to 42 U.S.C. § 405(g).[11] Macon asked the court to review the Secretary's determination and award child's insurance benefits on behalf of Wanda Griffin and Raymond Macon, or, in the alternative, to remand the case to the Secretary for a *de novo* rehearing. She amended her complaint on November 8, 1982, adding a demand that the *Boatman* Agreed Order be implemented, and adding 28 U.S.C. § 1361 (mandamus) as an additional jurisdictional basis.

In its decision of April 15, 1983, the district court found no jurisdiction under § 405(g) to review either the 1977 or 1980 application denials, but the court retained mandamus jurisdiction under 28 U.S.C. § 1361. Much later,[12] on December 1, 1989, the district court entered an order dismissing the case for lack of jurisdiction under either statute.[13] *Macon v. Schweiker*, No. 82–148–ORL–CIV–R (April 13, 1983). The court held that it did not have § 405(g) jurisdiction because "the action of the Secretary with respect to the second application was a decision not to reopen a previously denied application and is, therefore, not a 'final decision' for purposes of § 405(g)."[14]

### III. DISCUSSION

On appeal, Macon asserts jurisdiction under 42 U.S.C. § 405(g) and also under 28

---

living with the children or contributing to their support at the time of his death." *Id.* at 2. This language indicates that the ALJ considered only the child status requirement of § 416(h)(3) and again failed to consider the inheritance method of qualification for child status under § 416(h)(2)(A).

9. *See* Letter to Mary E. Macon entitled "Action of Appeals Council on Request for Review of Dismissal" (January 22, 1982) [R1–27–Exhibit].

10. *See* Memorandum from Margaret Tryon, Division of Civil Actions, OAO, .OHA, to Lillie Price, Social Security Division, OGC (October 25, 1982) [R1–38–Attachment].

11. 42 U.S.C. § 405(g) provides, in pertinent part:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business .... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a hearing.

12. The district court stayed this action in September of 1983 to await the resolution of the paternity proceedings in Florida state court. That action concluded in 1984. The state court ruled that Wanda Griffin and Raymond Macon are the natural children of Billie L. Griffin. *See In re the Estate of Billie L. Griffin*, No. 83–1091 (9th Cir.Fla.Probate Div. September 12, 1984). This action thereafter resumed. In August of 1985, this action was remanded to the Secretary for a consideration of what effect, if any, the Florida state court determination of beneficiaries would have on the Secretary's prior denial of benefits. In September of 1987, the order of remand was vacated because of the lack of progress in the administrative tribunal. *Macon v. Bowen*, No. 82–148–CIV–ORL–19, Magistrate's Report and Recommendation at 5 (M.D.Fla. August 2, 1989).

13. The district court's order was contrary to the recommendation by the magistrate judge that Macon be afforded relief under § 1361 although not under § 405(g). In rejecting § 405(g) jurisdiction, the magistrate judge found that the Secretary's denial of Macon's application was not a final decision after hearing under 42 U.S.C. § 405(g) and *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). *Macon v. Bowen*, No. 82–148–CIV–ORL–19, Magistrate Judge's Report and Recommendation ["R & R"] at 6 and 9 n. 3 (August 2, 1989) [R2–57–6, 9].

14. *Macon v. Bowen*, No. 82–148–CIV–ORL–19 at 5 n. 3 (M.D.Fla. December 1, 1989).

U.S.C. § 1361. We conclude that the district court has jurisdiction under § 405(g). Therefore, we decline to address the issue of mandamus jurisdiction under § 1361.

### A. *Jurisdiction under 42 U.S.C. § 405(g)*

■ We find that the district court has jurisdiction of Macon's appeal from the Secretary's denial of her 1980 application under 42 U.S.C. § 405(g) because of the Appeals Council's reexamination of the case pursuant to the *Boatman* Agreed Order. *See* Memorandum dated October 25, 1982.[15] The Secretary conceded in oral argument to this court that the Appeals Council reexamined this case pursuant to the *Boatman* Agreed Order. This concession is confirmed by the Secretary's position throughout these proceedings. *See* Supplemental Letter Brief from Stanley Ericsson to this court (October 31, 1990); Stanley Ericsson's "Report in Response to Order Filed July 17, 1987" at 4, ¶ 6 (October 7, 1987) [R1–38–4]; Memorandum dated October 25, 1982.

The *Boatman* reexamination in this case constitutes a consideration of the merits of the case and thus constitutes a reopening. As represented by the Secretary, "[t]he Appeals Council examined this case again, in light of the *Boatman* settlement, and concluded that the above-named children would not have inheritance rights under the laws of the state of Florida." Memorandum dated October 25, 1982.[16] The language of the Secretary's memorandum clearly indicates that the reexamination considered the merits of the issue of whether the children had "inheritance rights under the laws of the state of Florida." Thus, the reexamination applied the inheritance method to the facts of this case.[17] It is clear that the application of the inheritance method constituted a consideration of the merits of the case.

The law is well established that judicial review under § 405(g) is available when a social security claim is in fact reopened and reconsidered on the merits to any extent at any administrative level. *Graham v. Bowen*, 786 F.2d 1113, 1114 (11th Cir.1986); *Cherry v. Heckler*, 760 F.2d 1186, 1190 (11th Cir.1985) (quoting *McGowen v. Harris*, 666 F.2d 60, 65–66 (4th Cir.1981) (holding that a social security claim is subject to judicial review if it was reopened and reconsidered "on the merits to any extent and at any administrative level"). Because Macon's claim was reconsidered on the merits at the Appeals Council level, the district court has § 405(g) jurisdiction.

In light of the district court's § 405(g) jurisdiction, we remand this case for a review of the Secretary's denial of Macon's 1980 application. The review shall include, *inter alia*, whether the Appeals Council correctly applied the Florida intestacy laws to the facts of this case and whether the Secretary's *Boatman* reexamination complied with the *Boatman* Agreed Order. Should the district court conclude that the *Boatman* reexamination did not comply with the Agreed Order, it may be necessary for the district court to remand this case to the Secretary for proper reexamination.[18]

Because we hold that the district court has jurisdiction of this case pursuant to § 405(g), we need not address Macon's alternative argument in support of jurisdic-

---

**15.** *See supra* note 10.

**16.** *See supra* note 10.

**17.** The record in this case establishes that the inheritance method had not previously been applied to the facts of this case either in the 1977 application or in the 1980 application to reopen the 1977 application. *See* Notice of Rejection (May 31, 1977) [R1–27–Exhibit]; *supra* note 6. *See also* ALJ's Order of Dismissal in the case of Mary E. Macon (August 28, 1981) [R1–27–Exhibit], discussed *supra* note 8.

**18.** We recognize that another remand to the Secretary may be appropriate. As the district judge noted earlier in this case, there have been unreasonable delays in this matter. We suggest that the district court consider the case on remand expeditiously and that, if remand to the Secretary is appropriate, any remand order be carefully drawn to ensure expeditious handling. In light of the length of the delay in this case, we also suggest that the district court be alert to any actions which might be deemed dilatory.

tion, *i.e.,* mandamus under 28 U.S.C. § 1361.

## B. *Judicial Res Judicata*

The Secretary also argues that this claim is barred, in any event, by judicial *res judicata.* Specifically, the Secretary contends that *Boatman v. Bowen,* No. 78–C–299, 1988 WL 6957 (N.D.Ill. January 25, 1988), and *Brady v. Bowen,* No. 85–C–5544 (N.D. Ill. September 2, 1988), two cases in which Macon participated as a party plaintiff, bar Macon's claims. The Secretary has failed to persuade us that either case operates as judicial *res judicata* to the instant case.

### 1. *Boatman v. Bowen*

■ On December 5, 1985, Mary Macon Ward, Wanda D. Griffin, and Raymond L. Macon were among the plaintiffs who moved in the District Court of the Northern District of Illinois to "enforce the obligations imposed upon the Secretary of the United States Department of Health and Human Services ... by the [*Boatman*] Agreed Order." *Boatman v. Heckler,* No. 78–C–299, Motion for Relief From Order of Dismissal to Permit Enforcement of Agreed Order at 1 [R2–51–Exhibit 1]. The Illinois court characterized this action as a civil contempt proceeding against the Secretary. It denied plaintiffs' motions, concluding that the Secretary was not in civil contempt because the *Boatman* Agreed Order was not "an operative command capable of enforcement" under *International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64, 74, 88 S.Ct. 201, 206, 19 L.Ed.2d 236 (1967). *Boatman v. Bowen,* No. 78–C–299 at 6–7 (N.D.Ill. January 25, 1988).[19]

The proceedings in the instant case do not seek a civil contempt remedy against the Secretary. Rather, Macon seeks implementation of the *Boatman* Agreed Order with respect to her individual application for child's insurance benefits. The *Boatman* Agreed Order expressly contemplates that claims like the instant one will be handled as part of the routine disposition of individual applications.[20] Thus, we conclude that the *Boatman* proceedings would not have been the appropriate forum to litigate the instant claim for implementation of the *Boatman* Agreed Order, that the instant claim was not in fact litigated there, and that the resolution of *Boatman v. Bowen* does not bar this action under the principles of *res judicata.* Moreover, the subsequent *Brady* opinion by the same district judge, discussed *infra,* makes it clear that future petitions to enforce the *Boatman* Agreed Order are not barred by *res judicata.*

### 2. *Brady v. Bowen*

■ In June, 1987, Macon moved to join as a named plaintiff in the lawsuit of *Brady v. Bowen,* No. 85–C–5544 (N.D.Ill. September 2, 1988). The *Brady* case arose when the SSA sent Peggy Brady a notification that her case had been reexamined pursuant to *Boatman* and denied. The SSA's notice of denial was required by ¶ 8 of the *Boatman* Agreed Order. The plaintiffs in that case sought judicial review of the Secretary's denial of Peggy Brady's claim on behalf of Kennith Brady, and, in addition, they sought classwide relief to enforce the *Boatman* Agreed Order.[21] The Illinois district court found that the *Boatman* court had intended to retain jurisdiction over enforcement of the *Boatman* Agreed Order. *Brady v. Bowen,* No. 85–C–5544 at 8–9 (N.D.Ill. September 2, 1988). Therefore, the court held that Brady's suit to enforce the *Boatman* Agreed Order was

---

**19.** Contrary to the Secretary's argument that the *Boatman* court denied an enforcement proceeding on the merits, the court expressly denied only contempt-related motions. *Boatman v. Bowen,* No 78–C–299 at 8 (N.D.Ill. January 25, 1988).

**20.** *See infra.* at note 22 and text accompanying note 23.

**21.** Although the plaintiffs originally filed a complaint in the District Court for the Northern District of Texas, the Texas court subsequently transferred the case to the District Court for the Northern District of Illinois. *Brady v. Bowen,* No. 85–C–5544 at 7 (N.D.Ill. September 2, 1988).

more appropriately brought in the *Boatman* proceeding itself.

The administrative posture of the *Brady* case distinguishes that case from the instant case. On the date of the *Boatman* Agreed Order in October, 1981, the Secretary's denial of Brady's application for benefits was no longer pending. Brady had failed to seek timely review from the Appeals Council on her first application, and the Secretary denied a subsequent application on October 22, 1980. Brady sought judicial review only after a July 21, 1982 notification pursuant to ¶ 8 of the Agreed Order. Because Brady had no routine application pending at the time of the *Boatman* Agreed Order on October 7, 1981, and also because Brady's petition in district court sought classwide relief, Brady's petition did not satisfy the portion of ¶ 9 of the Agreed Order that is applicable to individuals whose claims were no longer pending on the date of the Agreed Order:

> The certification of the class will not limit the appeal rights of individual class members who have such rights under paragraph 8 of this decree if those rights are asserted in a timely manner *on behalf of that individual and no others.* (emphasis added).

*Boatman* Agreed Order ¶ 9.

By contrast, Macon's 1980 application for benefits was still pending at the time of the Agreed Order, and the Appeals Council did not deny her application until a month after the Agreed Order had been issued. Under the provision of ¶ 9 of the *Boatman* Agreed Order that is applicable to individuals with claims pending at the time of the Agreed Order, Macon is entitled to an individual judicial appeal:

> The certification of this class will also not affect the appeal rights (1) of individuals who have pursued their appeals in a timely manner and currently have an appeal pending at the reconsideration, hearing, or Appeals Council levels....

*Boatman* Agreed Order ¶ 9. Therefore, Macon's case is distinguishable from *Brady v. Bowen,* and the Illinois court's resolution of *Brady* does not control the instant action.

Moreover, the *Brady* court expressly held that Brady and other class members could petition the *Boatman* court for enforcement of the *Boatman* Agreed Order. Thus, it is clear that *Brady* does not constitute *res judicata* with respect to such enforcement proceedings, and *a fortiori* would not constitute *res judicata* with respect to a proceeding like the instant case which seeks implementation of the *Boatman* Agreed Order in a pending routine application by an individual as contemplated in ¶ 9 of the *Boatman* Agreed Order.[22]

For the foregoing reasons, we conclude that the instant action is not barred by judicial *res judicata.*

### C. *Implementation of the Boatman Order*

■ Because we hold that the district court does have jurisdiction under § 405(g) to review the denial of Macon's 1980 application, we need not address Macon's alternative argument that the district court had mandamus jurisdiction pursuant to § 1361. In light of the unreasonable delays that have already been encountered in this case, however, judicial economy indicates that we do decide an issue related to the Secretary's challenge to the district court's mandamus jurisdiction. The Secretary's primary argument against mandamus jurisdiction was that an adequate alternative remedy exists for Macon in the *Boatman* proceedings in the Northern District of Illinois. Because the Secretary presented this argument so forcefully, both in the district court and on appeal, we construe the argument as a request to transfer the case to the *Boatman* court in Illinois pursuant to the change of venue provisions of 28 U.S.C. § 1404.

We conclude that such a transfer would be inappropriate. Paragraph 9 of the

---

22. Although the *Boatman* court retained jurisdiction over class *enforcement* proceedings, see *Brady v. Bowen,* No. 85–C–5544 at 8 (N.D.Ill. September 2, 1988), the *Boatman* Agreed Order

expressly contemplates its *implementation* in the individual forums of social security applications. *See infra* text accompanying note 23.

*Boatman* Agreed Order specifically contemplates that implementation of the Agreed Order will take place as part of the individual appeal of any persons who had applications pending either at the reconsideration level, the hearing level, or the Appeals Council level at the time of the Agreed Order on October 7, 1981. As we have already noted, Macon's application was pending in the Appeals Council at that time. Thus, it is clear that the *Boatman* Agreed Order contemplates that the appropriate forum for the instant claim is the Florida district court to which we remand this case.[23]

For the foregoing reasons, we reverse the district court's denial of jurisdiction under 42 U.S.C. § 405(g) and remand for further proceedings consistent with this opinion. In light of our holding regarding § 405(g) jurisdiction, we do not reach the issue of jurisdiction under 28 U.S.C. § 1361.

REVERSED and REMANDED.

---

**23.** Because Macon's claim was pending before the Appeals Council on October 7, 1981, the above-mentioned provision of ¶ 9 expressly encompasses it. Accordingly, we need not address the issue of the appropriate forum for claims that were not pending on October 7, 1981. *See Boatman* Agreed Order ¶ 7(c) (providing that administrative *res judicata* will not be applied to bar any claim by an illegitimate child ever denied benefits pursuant to the dependency requirements of the pre-*Boatman* incorrect guidelines, and thus suggesting that it is appropriate to implement the *Boatman* Agreed Order in the forum of a routine individual application, whether or not it was pending on October 7, 1981).