Timothy J. **SANDERS** II, By and Through his next friend, Lorea **WAKEFIELD**, f/k/a Lorea Mobley, Plaintiff,

v.

Kenneth S. **APFEL**, Commissioner of Social Security of the Social Security Administration, Defendant.

No. 98–1265–CIV–J–JES.

United States District Court, M.D. Florida, Jacksonville Division.

Dec. 30, 1999.

Sarah H. Bohr, Atlantic Beach, FL, Angela Denise Mathews, Jacksonville Area Legal Aid, Jacksonville, FL, for plaintiff.

Ralph J. Lee, U.S. Attorney's Office, Jacksonville, FL, Roberta M. Bahnsen, U.S. Attorney's Office, Tampa, FL, for defendant.

### OPINION and ORDER[1]

STEELE, United States Magistrate Judge.

This matter is before the Court on plaintiff's Complaint (Doc. # 1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration (the Commissioner) denying plaintiff Timothy J. Sanders, II's claim for child's insurance benefits on the earnings record of Timothy J. Sanders. The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

### I. The ALJ Decision and Standard of Review

On October 11, 1994, Lorea Wakefield, formerly known as Lorea A. Mobley, applied for child's insurance benefits on behalf of her son Timothy J. Sanders, II (Timothy), on the earnings of deceased wage earner Timothy J. Sanders (Sanders). (Tr. 62–64). Sanders died fully insured on August 19, 1993. (Tr. 11, 62). The application was denied initially, and the administrative remedies were exhausted.

The Decision of Administrative Law Judge (ALJ) Linda R. Haack, dated May 16, 1997, denied plaintiff's claim for child's

---

1. Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated December 13, 1999. (Doc. # 19).

insurance benefits. (Tr. 8–15). The ALJ found that Timothy was not the natural son of Sanders (Tr. 11, 14), and that Sanders was not the natural or biological father of Timothy. (Tr. 13). The ALJ therefore concluded Timothy was not entitled to child's insurance benefits on the earnings of Sanders. (Tr. 15).

Plaintiff sought review by the Appeals Council, which denied review. (Tr. 4–5). Thus the Decision of the ALJ became the final decision of the Commissioner. *Falge v. Apfel,* 150 F.3d 1320, 1322–23 (11th Cir. 1998), *cert. denied,* 525 U.S. 1124, 119 S.Ct. 907, 142 L.Ed.2d 905 (1999); *Keeton v. Department of Health and Human Servs.,* 21 F.3d 1064, 1066 (11th Cir.1994).

 In reviewing a decision by the Commissioner, the District Court is bound to uphold the Commissioner's findings if they are supported by substantial evidence and based upon proper legal standards. 42 U.S.C. § 405(g); *Lewis v. Callahan,* 125 F.3d 1436, 1439–40 (11th Cir.1997). Factual findings are conclusive if supported by "substantial evidence," which is more than a scintilla and consists of such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Lewis v. Callahan,* 125 F.3d at 1440. The Court does not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996). If the Commissioner's decision is supported by substantial evidence, the Court must affirm even if the evidence predominates against the decision. *Miles v. Chater,* 84 F.3d at 1400. However, the Court must conduct an exacting examination of whether the Commissioner followed the appropriate legal standards in deciding the claim and reached the correct legal conclusions. *Miles v. Chater,* 84 F.3d at 1400. The failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted will mandate reversal. *Keeton v. Department of Health and Human Servs.,* 21 F.3d at 1066.

## II. Review of Facts and Conclusions of Law

### A. Background Facts:

Lorea Ann Wakefield (Ms. Wakefield) began an extramarital relationship with Sanders in 1986. (Tr. 33, 36) In 1987, Sanders divorced his wife. (Tr. 33). Ms. Wakefield testified she had sexual relations with Sanders, and Timothy was born to Ms. Wakefield on December 29, 1988. (Tr. 36–37). Ms. Wakefield testified that Sanders was the father of Timothy, she was not having sexual relations with any one else, and no other person could have been the father. (Tr. 36). She testified that Sanders was present at the hospital for the delivery, named the baby (Tr. 55), and generally acknowledged to other people that he was the father. (Tr. 37–38, 40–42, 55, 56).

Timothy's birth certificate, issued January 12, 1989, listed Sanders as Timothy's "father," and Sanders signed the birth certificate as a "parent." (Tr. 76). From March, 1989 through 1990 or 1991, Ms. Wakefield and Sanders lived together, but never married. (Tr. 31, 32, 33, 36, 37–38). Timothy and Ms. Wakefield's two daughters resided with them (Tr. 77, 84), although Sanders' name was stricken on the lease agreement. (Tr. 84–86). Sanders contributed to the household expenses of the apartment and for the care of Timothy (Tr. 38, 83, 87, 88, 91), and set up a savings bond in Timothy's name. (Tr. 42). Timothy recognized Sanders as his father. (Tr. 54). On October 27, 1990, Sanders completed an Application for Life and/or Health Insurance identifying himself as Timothy's father and placing Timothy on his policy. (Tr. 93–97). Timothy also received health care coverage under Sanders' group health insurance. (Tr. 89).

Sometime in 1990 Sanders moved out of the apartment he shared with Ms. Wakefield. (Tr. 33–34). Sanders eventually reconciled with his wife, and, after living alone or with his mother for a period of time, in 1991 Sanders re-married his for-

mer wife and moved in with her. (Tr. 33–34). Sanders then changed his health and life insurance policy, apparently deleting Timothy from them. (Tr. 42).

In 1991, Ms. Wakefield, through the Florida Department of Revenue, filed suit in state court for child support from Sanders. In connection with this suit, she, Sanders, and Timothy took Human Leukocyte Antigen (HLA) blood tests to establish whether Timothy was Sanders' biological son. (Tr. 42–43, 45–46, 58, 102). The blood test established that Sanders could not be the biological father of Timothy. (Tr. 42–45, 92, 102, 150). While Ms. Wakefield believed the test was incorrect, she did not ask for another test. (Tr. 43–44). The State suit against Sanders was dismissed with prejudice in 1992 because of the blood test. (Tr. 26, 49, 58, 92, 150).

Sanders died on August 19, 1993 (Tr. 34, 62, 150), and his first wife is now deceased. (Tr. 53). At the time of Sanders death in 1993, Timothy was living with and was primarily supported by Ms. Wakefield. (Tr. 28). Timothy did not inherit anything from Sanders' estate. (Tr. 52).

## B. Specific Issues:

At the July 16, 1996, administrative hearing, plaintiff's attorney stated that plaintiff had never asserted that Sanders was the biological parent of Timothy. (Tr. 30).[2] Instead, counsel argued that Timothy is entitled to child's insurance benefits, even if not the biological child of Sanders, if (1) Sanders acknowledged paternity of Timothy in writing; or (2) Timothy would be entitled to inherit from Sanders under Florida intestacy law. (Tr. 30–31, 47). The ALJ found as a matter of law that a child must be the biological son or daughter of the insured in order to be eligible for child's insurance benefits, and that factors such as written acknowledgment and support can establish this eligibility (Tr. 14). The ALJ found as a matter of fact,

however, that scientific evidence rebutted any claim that Timothy was the biological son of Sanders.

The threshold issue is whether the child is required to be the biological son or daughter of the deceased insured in order to be eligible for child's insurance benefits. Under 42 U.S.C. § 402(d), a child of a person who dies fully or currently insured is entitled to child's insurance benefits if the child (1) has filed an application for such benefits; (2) was unmarried and (a) either not yet 18, or a full-time elementary or secondary school student and not yet 19, or (b) under a disability which began before age 22; and (3) was dependent upon the person who died fully or currently insured at the time of such death. 42 U.S.C. § 402(d)(1)(A)–(C). "The baseline requirement is simply that the child be dependent upon the parent wage earner at the time of death." *Cox v. Schweiker*, 684 F.2d 310, 313 (5th Cir.1982). Most litigation under this statute involves the dependency requirement, and the dependency distinctions made by the statute between a legitimate and illegitimate child. *E.g., Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976); *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974); *Daniels on Behalf of Daniels v. Sullivan*, 979 F.2d 1516 (11th Cir.1992); *Jones v. Sullivan*, 953 F.2d 1291 (11th Cir.1992); *Macon on Behalf of Griffin v. Sullivan*, 929 F.2d 1524 (11th Cir.1991); *Orsini on Behalf of Orsini v. Sullivan*, 903 F.2d 1393 (11th Cir.1990), *cert. denied*, 498 U.S. 1024, 111 S.Ct. 672, 112 L.Ed.2d 665 (1991); *Hart By and Through Morse v. Bowen*, 802 F.2d 1334 (11th Cir.1986); *Handley By and Through Herron v. Schweiker*, 697 F.2d 999 (11th Cir.1983); *Cox v. Schweiker*, 684 F.2d 310 (5th Cir.1982).

This case requires the Court to address the more fundamental issue of who is a

---

**2.** This does not appear to be literally correct. On January 4, 1995, counsel wrote that Timothy was "the natural child" of Sanders. (Tr. 73). This assertion was repeated in an undated brief submitted to the ALJ at the time of the administrative hearing. (Tr. 103). Additionally, Ms. Wakefield testified that Sanders was Timothy's biological father. (Tr. 36–37, 44–45).

"child" under the statute. Child's insurance benefits are available to "[e]very child (as defined in section 416(e) of this title) ...." 42 U.S.C. § 402(d)(1). The only portion of Section 416(e) applicable to this case provides that a "child" means "(1) the child or legally adopted child of an individual...." Since there is no evidence or argument that Timothy was legally adopted or deemed to be legally adopted by Sanders, the effect of the statute in this case is to simply define a child as a child.

There are no Eleventh Circuit cases resolving the issue of whether a "child" must be the biological child of the deceased insured person. Relevant cases in the Eleventh Circuit have all found the child in question to be, as a factual matter, the biological son or daughter of the insured. *See, e.g., Daniels on Behalf of Daniels v. Sullivan,* 979 F.2d at 1521–22 n. 7; *Jones v. Sullivan,* 953 F.2d at 1295; *Macon on Behalf of Griffin v. Sullivan,* 929 F.2d at 1528 n. 12; *Orsini on Behalf of Orsini v. Sullivan,* 903 F.2d at 1394; *Hart By and Through Morse v. Bowen,* 802 F.2d at 1336; *Handley By and Through Herron v. Schweiker,* 697 F.2d at 1005–06; *Cox v. Schweiker,* 684 F.2d at 313.

The statute does provide further guidance concerning the determination of who is a "child." 42 U.S.C. § 416(h) provides four sequential methods for determining whether an applicant is a child of a fully or currently insured individual for purposes of child's insurance benefits. First, the Commissioner "shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death...." § 416(h)(2)(A). Second, if the applicant is the "son or daughter" of the deceased insured person, but is not and is not deemed to be the child of such insured person under § 416(h)(2)(A), the applicant "shall" be deemed to be the child of the deceased insured if there was a marriage ceremony between the putative parents which, but for a certain legal impediment, would have been a valid marriage. § 416(h)(2)(B). Third, if the applicant is the "son or daughter" of the deceased insured person, but is not and is not deemed to be the child of such insured person under either prongs of § 416(h)(2), the applicant "shall" be deemed to be the child of the deceased insured if the deceased insured person had, before his or her death, (1) "acknowledged in writing that the applicant is his or her son or daughter," (2) "had been decreed by a court to be the mother or father of the applicant", or (3) "had been ordered by a court to contribute to the support of the applicant because the applicant was his or her son or daughter." § 416(h)(3)(C)(i). Finally, if the applicant is the "son or daughter" of the deceased insured person, but is not and is not deemed to be the child of such insured person under either prongs of § 416(h)(2), the applicant "shall" be deemed to be the child of the deceased insured if the deceased insured person is shown by satisfactory evidence to (1) have been the mother or father of the applicant, and (2) have been living with or contributing to the support of the applicant at the time of his or her death. § 416(h)(3)(C)(ii).

In this case, plaintiff asserts that he qualifies as the child of Sanders under the first and third methods. (Doc. # 13, pp. 10–18).

### (1) "Child" for Purposes of Devolution of Intestate Personal Property:

The Commissioner first applies § 416(h)(2)(A) to determine whether Timothy was the child of Sanders for child's insurance purposes. *Lawrence on Behalf of Lawrence v. Chater,* 516 U.S. 163, 164, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996); *Baker on Behalf of Baker v. Sullivan,* 880 F.2d 319, 321 (11th Cir.1989); *Hart By and Through Morse v. Bowen,* 802 F.2d at 1335. Both parties agree that Sanders was domiciled in Florida at the time of his

death. Therefore the Commissioner looks to Florida law to determine whether Timothy was the child of Sanders, if the state law is constitutional. *Lawrence on Behalf of Lawrence v. Chater*, 516 U.S. at 165, 175, 116 S.Ct. 604; *Daniels on Behalf of Daniels v. Sullivan*, 979 F.2d at 1517; *Cox v. Schweiker*, 684 F.2d at 317.[3] The Court looks to Florida law as it existed on the date of plaintiff's application (October 11, 1994). *Hart By and Through Morse v. Bowen*, 802 F.2d at 1336. If under Florida law regarding the devolution of intestate personal property Timothy is considered to be the child of Sanders, he "shall" be deemed to be Sanders' child for child's insurance benefits purposes. 42 U.S.C. § 416(h)(2)(A) ("Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.")

The intestate succession of children born out of wedlock is governed by Florida Statutes § 732.108(2), which in 1994 provided as follows:

(2) For the purpose of intestate succession in cases not covered by subsection (1) [dealing with adopted children], a person born out of wedlock is a lineal descendant of his mother and is one of the natural kindred of all members of the mother's family. The person is also a lineal descendant of his father and is one of the natural kindred of all members of the father's family if:

(a) The natural parents participated in a marriage ceremony before or after the birth of the person born out of wedlock, even though the attempted marriage is void.

(b) The paternity of the father is established by an adjudication before or after the death of the father.

(c) The paternity of the father is acknowledged in writing by the father.

It is clear that Timothy does not qualify under Section (2)(a), since there is no claim that Ms. Wakefield and Sanders ever went through a marriage ceremony. It is also clear that Timothy does not qualify under Section 2(b), because Sanders' paternity has never been established by an adjudication. Quite to the contrary. The blood tests provide substantial evidence to support the ALJ's finding that Sanders was not the biological father of Timothy. In *Handley By and Through Herron v. Schweiker*, 697 F.2d at 1005, the Eleventh Circuit stated: "Blood tests can conclusively disprove paternity and HLA (tissue) tests can conclusively prove paternity without the need for more ordinary forms of testimony."

■ The only possible ground under Florida law to establish intestate succession for Timothy is Section 3(c), i.e., where the "paternity of the father is acknowledged in writing by the father." Such a written acknowledgment settles the issue of paternity for purposes of intestate succession under the statute. *Holmen v. Holmen by Rahn*, 697 So.2d 866, 867 (Fla. 4th DCA 1997).

Plaintiff points primarily to Sanders' signature on the birth certificate, and also his identification of Timothy as his son on the insurance application, as being such written acknowledgments within the meaning of the Florida intestacy statute. The Commissioner's memorandum does not specifically challenge plaintiff's assertion that the birth certificate and insurance application constitute an adequate written acknowledgment under Florida law. (Doc. # 16, pp. 5–9). Rather, the Commissioner argues that the subsequent blood tests and the dismissal of the state paternity suit against Sanders prevents the written acknowledgment from having continued validity.

The Court first makes explicit what is seemingly not disputed by the Commissioner. Fla.Stat. § 732.108(2)(c) requires no particular form of written acknowledgment. The Court concludes that Sanders did make satisfactory written acknowledgment within the meaning of the Florida statute by signing the birth certificate and

**3.** There is no claim in this case that the Flori- da law is unconstitutional.

identifying Timothy as his son in writing on the insurance application.

■ The remaining issue is whether an adequate written acknowledgment can be nullified by later evidence from the paternity suit that the deceased was not in fact the biological father of the child. Under Florida law, a paternity case establishes the "legal father," which is usually but not always the biological father. *D.F. v. Department of Revenue ex. rel. L.F.*, 736 So.2d 782, 785 n. 3 (Fla. 2nd DCA 1999). In *Holmen*, the decedent had executed an affidavit acknowledging his paternity of the child, filed the affidavit with the State of Florida, and obtained an amended birth certificate showing decedent as the child's father. 697 So.2d at 867. The Court found that "decedent's written acknowledgment in this case thus establishes paternity for purposes of intestate succession." *Id.* at 868 (footnote omitted). The Court refused to allow the presentation of scientific and other evidence in a probate proceeding to establish that the decedent was not the biological father. *Id.* Thus, *Holmen* precludes a challenge to the paternity of Sanders in a proceeding after such a written acknowledgment. Under *Holmen*, Florida courts would not allow the subsequent blood tests to contest paternity in intestacy proceedings. *See also Knauer v. Barnett*, 360 So.2d 399, 403, 405–06 (Fla.1978); *Locke v. Estate of Campbell*, 305 So.2d 825, 826 (Fla. 1st DCA 1975). Since Section 416(h)(2)(A) requires this Court to apply Florida intestacy law, there is no reason to allow the Commissioner to impeach Sanders' acknowledged paternity with these after-acquired blood test results. The Court concludes that under Florida law Timothy would be considered a child of Sanders for intestacy purposes.

This conclusion is also supported by a Social Security Ruling precluding a Georgia putative father from renouncing his written acknowledgment of paternity. *See* Social Security Ruling 84–3 (finding that under Georgia law, once an alleged father has recognized and acknowledged a child as his own in accordance with state statutory requirements, such recognition and acknowledgment may not thereafter be revoked). *Compare* Social Security Ruling 73–52C (citing a court decision in which Virginia law permitted rebuttal of presumption of legitimacy).

(2) **Is a Biological Relationship Required Under Section 416(h)(3)(C)(i)?**

Plaintiff also asserts that he qualifies as a child under Section 416(h)(3)(C)(i). The Court cannot agree. If it were necessary to reach this issue, the Court would conclude that Timothy would not qualify as a child under Section 416(h)(3)(C)(i). This section requires the applicant to be the "son or daughter" of the deceased insured, and that there be a written acknowledgment that the applicant is his "son or daughter." This clearly requires a biological relationship between the insured and the child. Identical language in Section 416(h)(3)(C)(ii) has been interpreted to require the child to prove the insured was his or her biological parent. *Orsini on Behalf of Orsini v. Sullivan*, 903 F.2d at 1395.

Accordingly, the Clerk shall enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **reversing** the Decision of the Commissioner, and remanding for the award of child's insurance benefits to Timothy J. Sanders II on the earnings record of Timothy J. Sanders.