# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 4, 2004          Decided May 20, 2005

No. 03-5153

ROSITA S. JAVIER,
APPELLANT

v.

COMMISSIONER OF SOCIAL SECURITY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 00cv01433)

———

*Lorane F. Hebert*, appointed by the court, argued the cause as *amicus curiae* in support of the appellant. *Patricia A. Brannan* was on brief.

*Rosita S. Javier*, pro se, was on brief for the Appellant.

*Fred E. Haynes*, Assistant United States Attorney, argued the cause for appellee. *Kenneth L. Wainstein*, United States Attorney, *Michael J. Ryan*, Assistant United States Attorney, and *Daniel Y. Balsam*, Attorney, Social Security Administration, were on brief. *R. Craig Lawrence*, Assistant United States Attorney, entered an appearance.

Before: HENDERSON and ROGERS, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

HENDERSON *Circuit Judge*: Alfonso T. Javier was a naturalized United States citizen who lived in his native country, the Philippines, from the late 1970s until his death on July 17, 2004. Based on his long-time employment in the United States, Javier qualified as an insured individual and received retirement benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (Act). In addition, his wife and two sons received Social Security benefits for many years until the Social Security Administration (SSA or Administration) terminated the benefits in 1996. This appeal results from the decision of the SSA to terminate Javier's wife's and children's benefits on the basis of blood tests demonstrating that Javier was not the children's biological father. Both the administrative law judge and the district court upheld the SSA's action. Because the parties do not contest that the Act's choice of law provision dictates the application of Philippine law, under which the SSA lacks standing to challenge Javier's paternity, we now reverse in part.

## I.

Alfonso Javier was born in the Philippines on January 19, 1904 and became a naturalized United States citizen on March 20, 1943. Javier began receiving Social Security benefits in 1970. He later returned to the Philippines and, in October 1977, he married Rosita Suguitan (Mrs. Javier). The dispute between Javier and the SSA centers on Mrs. Javier's delivery of three children, ostensibly the offspring of Javier, between 1983 and 1986. Allen S. Javier was born October 25, 1983. On June 26, 1984, Mrs. Javier applied for "[w]ife's insurance benefits," 42 U.S.C. § 402(b), and "[c]hild's insurance benefits," *id.* § 402(d), on behalf of Allen. SSA conducted a brief investigation to confirm the Javiers' claim for benefits and ascertained that Allen was living in the Javiers' custody. SSA authorized Social Security benefits for Mrs. Javier and Allen, effective November 1983. Philip G. Javier was born September 17, 1984 and on

December 19, 1984, Mrs. Javier applied for "child's insurance benefits," *id*., on Philip's behalf. An SSA field examiner determined that the child was entitled to benefits, effective October 1984. In response to an anonymous letter questioning Javier's paternity of the two boys, the SSA conducted another investigation in June 1985. This investigation, which included a visit to the Javiers' home, interviews with neighbors and a review of Mrs. Javier's hospital records, again resulted in a favorable determination of Javier's paternity.

Mrs. Javier then gave birth to a daughter, Felrosh Ann, on December 5, 1986. Javier was 82 years old at the time of Felrosh Ann's birth. The Javiers applied for citizenship on behalf of Felrosh Ann on September 18, 1989. The United States Department of State, which had previously issued a Certification of Birth Abroad of a Citizen of the United States of America both to Allen and to Philip, launched an investigation into the paternity of all three children. Each member of the family submitted to a blood test, with surprising results. Javier was determined not to be the father of any of the children. Mrs. Javier was eliminated as the biological mother of Allen but the tests demonstrated a 91.6 per cent probability of maternity with respect to Philip and Felrosh Ann.

The State Department relied on the results of the blood tests to deny Felrosh Ann's application for citizenship and to revoke Allen's and Philip's citizenship. For reasons not explained in the record, the results were not forwarded to the SSA until November 29, 1995. The SSA reopened its paternity investigation in March 1996 and terminated Mrs. Javier's, Allen's and Philip's benefits in April of that year. The SSA sought $26,315.30 in "overpayment" from Mrs. Javier, Letter from SSA to Rosita S. Javier (May 24, 1996), $29,633.30 from Allen, Letter from SSA to Rosita S. Javier for Allen S. Javier (May 24, 1996), and $29,486 from Philip, Letter from SSA to Rosita S. Javier for Philip G. Javier (May 24, 1996). Javier

allowed the SSA to garnish $300 per month from his benefits to help repay the amount owed. Javier also sought reconsideration of his wife's and sons' eligibility for benefits, which was denied by the SSA.

Javier then sought and received a hearing before an Administrative Law Judge (ALJ). The ALJ interpreted the Social Security Act to require the application of the law of the insured's domicile in determining whether an applicant for benefits constitutes "the child … of a fully or currently insured individual" under the Act. 42 U.S.C. § 416(h)(2)(A). The ALJ found that neither Allen nor Philip qualified as a "'child' of the wage earner under the laws of the Philippines," which law, the ALJ concluded, permits a child's paternity to "be impugned" if "it is proved that for biological or other scientific reasons, the child could not have been that of the husband." Philippines Family Code Art. 166 (Article 166). Javier sought judicial review of the ALJ's decision in the district court under 42 U.S.C. § 405(g). The district court affirmed the ALJ, adopting his legal analysis with respect to the choice of law rule mandated by the Social Security Act and his conclusion that Article 166 provided a legal basis for the termination of Mrs. Javier's and the children's benefits. *Javier v. Comm'r of Soc. Sec.*, No. 00-1433 (D.D.C. June 6, 2002) (Mem. Op.) at 6–7.

Javier filed a "Motion for Reconsideration, or, in the Alternative, Motion for Formal Appeal" in district court on July 19, 2002. The court interpreted the motion as one made under FED. R. CIV. P. Rule 60(b), and denied it on August 21, 2002. In a subsequent order on January 10, 2003, the district court vacated in part its August 21 order, ordering Javier's Motion for Formal Appeal to be docketed as of the date of filing. Thus, Javier's appeal was timely filed and is properly before us.

5

II.

The Social Security Act guarantees benefits to "[e]very child" of an "insured individual" under the Act. 42 U.S.C. § 402(d)(1). The Act also provides spousal benefits to the mother of a qualified child. *See id.* § 402(b)(1)(B). The Act establishes the following procedure to determine whether an individual qualifies as a "child." "Child" is defined, *inter alia*, as "the child or legally adopted child of an individual." *Id*. § 416(e). To determine whether an applicant meets the Act's definition of "child," the SSA must:

> apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled … or, if such insured individual is … not so domiciled in any State, by the courts of the District of Columbia. *Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.*

*Id*. § 416(h)(2)(A) (emphasis added). The District of Columbia applies the law of the domicile of the decedent to determine intestate succession. *See In re Gray's Estate*, 168 F. Supp. 124, 126 (D.D.C. 1958) (finding "no local cases on … point" but adopting rule "that the law of the domicile of decedent governs distribution of personal property"). Javier, as well as Mrs. Javier and the three children, are all domiciled in the Philippines. The parties agree that we decide this case under Philippine law.

The Philippine Civil Code vests intestate inheritance rights in "the legitimate and illegitimate relatives of the deceased, in the surviving spouse, and in the State." Philippine Civil Code art. 961. A child born during a valid marriage "shall be considered legitimate although the mother may have declared against its legitimacy or may have been sentenced as an adulteress."

Philippine Family Code art. 167. Article 166(2) of the Philippines Family Code permits the legitimacy of a child to be impugned on the ground that "for biological or other scientific reasons, the child could not have been that of the husband." *Id*. at art. 166(2). Using Article 166(2), both the ALJ and the district court ruled in favor of the SSA. Article 166, however, addresses only the basis for a paternity challenge, not the issue of standing to mount the challenge. Article 170 of the Philippines Family Code provides that:

> [t]he action to impugn the legitimacy of the child shall be brought within one year from the knowledge of the birth or its recording in the civil register, if the husband or, in a proper case, any of his heirs, should reside in the city or municipality where the birth took place or was recorded.

*Id*. at art. 170. The Philippine Supreme Court has interpreted Article 170 to bar all persons other than the husband (or his heirs, in certain circumstances)[1] from challenging paternity. "The presumption of legitimacy fixes a civil status for the child born in wedlock, and only the father, or in exceptional instances the latter's heirs, can contest in an appropriate action the legitimacy of a child born to his wife." *De Jesus v. Estate of*

---

[1] The heirs of the husband may impugn the filiation of the child within the period prescribed [by Article 170] only in the following cases:

(1) If the husband should die before the expiration of the period fixed for bringing his action;

(2) If he should die after the filing of the complaint without having desisted therefrom; or

(3) If the child was born after the death of the husband.

Philippine Family Code Art. 171.

*Dizon*, 366 SCRA 499, 506 (2001) (emphasis and footnotes omitted);[2] s*ee also Macadangdang v. Court of Appeals*, 100 SCRA 73, 89 (1980) ("The right to repudiate or contest the legitimacy of a child born in wedlock belongs *only* to the alleged father, who is the husband of the mother … and *only in a direct suit brought for the purpose*.") (emphasis in original & internal citations omitted).

The Administration argues that the application of Philippine law would invite fraud against the government because paternity would be effectively unchallengeable.  But the SSA has not brought a fraud action against Javier; it is contesting whether Allen and Philip qualify as children within the meaning of the Act.  No evidentiary record has been developed regarding fraud, leaving this court in no position to evaluate whether the actions of Javier's family were fraudulent.  Moreover, our decision in this case does not prevent the SSA from pursuing a fraud action against the Javiers.

The SSA also relies on 20 C.F.R. § 404.355, which provides:

> We [the SSA] will not apply any State inheritance law requirement that an action to establish paternity must be taken within a specified period of time measured from the worker's death or the child's birth, or that an action to establish paternity must have been started or completed before the worker's death.  If applicable State inheritance law requires a court determination of paternity, we will not require that you obtain such a determination but will decide your paternity by using the standard of proof that the State court would use as the basis for a determination of paternity.

---

[2] All citations to decisions by the Philippine Supreme Court are to the Supreme Court Reports Annotated (SCRA), published and distributed by Central Book Supply, Inc., Manila, Philippines.

20 C.F.R. § 404.355(b)(2). Under no natural reading, however, does this regulation confer standing on a third-party—including the SSA—to challenge a child's legitimacy. It is intended instead to allow a child to establish a filial relation without regard to state statutes of limitation that would otherwise bar a paternity suit as well as state statutes requiring a judicial declaration of paternity.[3]

Moreover, the SSA's entire line of argument misunderstands the public policy implicit in both the Act and the Philippine Civil Code. Defining family relationships is a matter traditionally left to the States under the United States Constitution. *See United States v. Morrison*, 529 U.S. 598, 615 (2000) (identifying "family law" as area of "traditional state regulation"). The Act dictates that an applicant for benefits "shall be deemed" to "have the same status" as that conferred by the intestate succession law of the insured's domicile. 42 U.S.C. § 416(h)(2)(A). This language reflects the Congress's decision to defer to the States (or, here, the District of Columbia) on policy choices regarding familial status. The Philippines has made its own policy determination: "There is perhaps no presumption of the law more firmly established and founded on sounder morality and more convincing reason than the

---

[3] The SSA's claim that the blood test does not constitute the mother's testimonial declaration against legitimacy that would violate Lord Mansfield's Rule — which provides that a wife and husband may not testify against a child's legitimacy — misses the mark. *See Voss v. Shalala*, 32 F.3d 1269, 1272 n.3 (8th Cir. 1994) (tracing Lord Mansfield's Rule to *Goodright v. Moss*, 98 Eng. Rep. 1257 (1777)). Javier asserts no defense based on Lord Mansfield's Rule; moreover, Lord Mansfield's Rule is directed at the admissibility of evidence rather than standing — the critical issue here — and thus is inapplicable. *See Becker v. Sec'y of Health & Human Servs.*, 895 F.2d 34, 36 (1st Cir. 1990) (describing Lord Mansfield's Rule as "evidentiary rule").

presumption that children born in wedlock are legitimate." *De Jesus v. Estate of Dizon*, 366 SCRA 499, 504 (2001) (footnote omitted). For this reason, under Article 170 and Article 171 of the Philippine Family Code "only the father, or in exceptional instances [his] heirs" has standing to contest paternity. *De Jesus*, 366 SCRA at 506 (emphasis omitted). The limited relevant case law that exists supports our conclusion here. *See Gray v. Richardson*, SSR No. 83-37c, 1983 WL 31272, at *2–3 (1983) (interpreting section 216(h)(2)(A) of the Act to require SSA to accept paternity determination of state court based on state intestacy law); *cf. Sanders v. Apfel*, 85 F. Supp. 2d 1275, 1281 (M.D. Fla. 1999) (reversing SSA's denial of application for child's benefits and finding inadmissible under state law contrary scientific evidence after paternity acknowledged by father). Thus, under the current statutory and regulatory scheme, Philip and, therefore, Mrs. Javier are eligible to receive Social Security benefits.[4]

III.

A different analysis is required with respect to Allen's claim for benefits. Article 163 of the Philippine Family Code states that the "filiation of children may be by nature or by adoption. Natural filiation may be legitimate or illegitimate." Intestate succession under the Philippine Civil Code is applicable to a natural legitimate or illegitimate heir as well as an adoptee, *see* Arts. 961, 979, but not to an individual who is neither adopted nor the natural child of the testator. Thus, Philippine courts

---

[4] Mrs. Javier's right to spousal benefits during the period at issue in this case is contingent on Philip's eligibility. The Act provides that a wife is entitled to benefits if she "has in her care (individually or jointly with [the insured individual]) … a child entitled to a child's insurance benefit." 42 U.S.C. § 402(b)(1)(B). Philip's eligibility, as noted earlier, results from his being Mrs. Javier's biological child who was born during her marriage to Javier and whose legitimacy has not been impugned under Philippine law.

have entertained challenges to maternity where the biological relation of the child to the mother is questioned. In *Babiera v. Catotal*, 333 SCRA 487 (2000), the Philippine Supreme Court held that Article 171 presents no bar to standing if "the prayer…is not to declare that petitioner is an illegitimate child…but to establish that the former is not the latter's child at all." *Babiera*, 333 SCRA at 495. Article 171 "presupposes that the child was the undisputed offspring of the mother." *Babiera*, 333 SCRA at 495. As Allen appears, from the record, to be neither the natural nor adopted child of Mrs. Javier, he enjoys no presumption of filiation. Thus, the SSA is free to challenge Allen's status as a "child" under the Act.

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part and the Social Security Administration is ordered to reinstate benefits to Mrs. Javier and Philip, including any funds wrongfully withheld.

*So ordered.*